**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Irene Sanchez, Thomas Torres, Marilyn
Grabador Torres, Amjad Hayaud-Din, as          Case No. 1:14-cv-20468
individuals, on their own behalves and on
behalf of all others similarly situated,

                      Plaintiffs,

       v.

JPMORGAN CHASE BANK, N.A.
                      Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE,**
**TO STAY THE ACTION IN FAVOR OF INDIVIDUAL ARBITRATION**
**AND INCORPORATED MEMORANDUM OF LAW**

Robert M. Brochin
Florida Bar No. 319661
rbrochin@morganlewis.com
Brian M. Ercole
Florida Bar No. 0102189
bercole@morganlewis.com
Morgan Lewis & Bockius LLP
200 South Biscayne Boulevard – Suite 5300
Miami, Florida 33131-2339
Telephone:     305.415.3000
Facsimile:     305.415.3001

*Counsel for Defendant, JPMorgan Chase*
*Bank, N.A.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

I.      INTRODUCTION..........................................................................................1

II.     FACTUAL BACKGROUND ........................................................................3

        A.     The Parties .........................................................................................3

        B.     The Controlling 2013 Deposit Account Agreement Provides For The Arbitration Of All Disputes On An Individual Basis.................................................4

        C.     Chase Provided Each Plaintiff With The Deposit Account Agreement, Along With Notice Of The 2013 Amendments To The Agreement, And No Plaintiff Opted Out Of The Arbitration Requirement. ......................................7

        D.     Plaintiffs Filed This Action And, In So Doing, Ignored Their Agreements To Arbitrate Their Disputes With Chase. .................................................9

        E.     Chase Has Elected To Proceed With Arbitration...................................10

III.    ARGUMENT ...............................................................................................10

        A.     The Federal Arbitration Act Applies. ...................................................11

        B.     Plaintiffs Are Required To Arbitrate All Of Their Claims. ..................................12

                1.     Plaintiffs Agreed To Arbitrate Their Disputes With Chase Through The Very Agreement That Plaintiffs Are Suing Under And That Plaintiffs Have Attached To Their Complaint. .........................................12

                2.     Plaintiffs' Claims All Fall Within The Broad Scope Of The Arbitration Provision In The 2013 Deposit Account Agreement. .............12

        C.     The Arbitration Provision Mandates Individual, Non-Class Arbitration Of Plaintiffs' Claims. .........................................................................15

IV.    CONCLUSION............................................................................................17

CERTIFICATE OF COMPLIANCE WITH S.D. FLA. L.R. 7.1(a)(3) .......................................17

## TABLE OF AUTHORITIES

### CASES

*24 Go Wireless, Inc. v. AT&T Mobility II, LLC,*
  No. 11-20930-CIV, 2011 WL 2607099 (S.D. Fla. June 30, 2011) ................................... 14

*American Express Co. v. Italian Colors Restaurant,*
  133 S. Ct. 2304 (2013) ........................................................................................................ 3

*Arthur Andersen LLP v. Carlisle,*
  556 U.S. 624 (2009) .......................................................................................................... 12

*AT&T Mobility LLC v. Concepcion,*
  131 S. Ct. 1740 (2011) ........................................................................................... 3, 15, 16

*AT&T Tech., Inc. v. Commn's Workers of Am.,*
  475 U.S. 643 (1986) .......................................................................................................... 13

*Becker v. Davis,*
  491 F.3d 1292 (11th Cir. 2007) ....................................................................................... 12

*Bolamos v. Globe Airport Security Servs., Inc.,* No. 02-21105,
  2002 WL 1839210 (S.D. Fla. May 21, 2002) ................................................................. 12

*Buckeye Check Cashing, Inc. v. Cardegna,*
  546 U.S. 440 (2006) .......................................................................................................... 10

*Cruz v. Cingular Wireless,*
  648 F.3d 1205 (11th Cir. 2011) ................................................................................... 3, 16

*Dean Witter Reynolds, Inc. v. Byrd,*
  470 U.S. 213 (1985) .......................................................................................................... 10

*Gilmer v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 (1991) ............................................................................................................ 11

*Green Tree Fin. Corp.-Alabama v. Randolph,*
  531 U.S. 79 (2000) ............................................................................................................ 10

*In re Managed Care Litig.,*
  No. 00-MD-1334, 2003 WL 22410373 (S.D. Fla. Sept. 15, 2003) ................................. 13

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,*
  473 U.S. 614 (1985) .......................................................................................................... 13

*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983) .......................................................................................................... 10

*Pendergast v. Sprint Nextel Corp.*,
    691 F.3d 1224 (11th Cir. 2012) ................................................................................. 3, 16

*Pham v. JPMorgan Chase Bank, N.A.*,
    No. RG12-652919, slip op. (Cal. Super. Ct. July 30, 2013) ........................................ 3, 11

*Picard v. Credit Solutions, Inc.*,
    564 F.3d 1249 (11th Cir. 2009) ...................................................................................... 11

*Ruby-Collins, Inc. v. City of Huntsville*,
    748 F.2d 573 (11th Cir. 1984) ........................................................................................ 13

*Scott v. JPMorgan Chase & Co.*,
    No. 13 Civ. 646(KPF), 2014 WL 338753 (S.D.N.Y. Jan. 30, 2014) ..................... 3, 11, 16

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
    599 U.S. 662 (2010) ........................................................................................................ 15

*United Steelworkers of Am. v. Warrier & Gold Navigation Co.*,
    363 U.S. 574 (1960) ........................................................................................................ 13

## STATUTES

9 U.S.C. §§ 1-16 ............................................................................................................... 1, 5, 11

## RULES

Fed. R. Civ. P. 12(b) ............................................................................................................... 1

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), and Rule 12(b) of the Federal Rules of Civil Procedure, Defendant, JPMorgan Chase Bank, N.A. ("Chase"), moves for an Order dismissing the putative class action claims of Plaintiffs, Irene Sanchez, Tomas Torres (misnamed in the Complaint as Thomas Torres), Marilyn Grabador Torres, and Amjad Hayaud-Din, in favor of arbitration proceedings on an individual basis, or, in the alternative, staying those claims pending the completion of individual arbitration proceedings.[1]

## I.    INTRODUCTION

Plaintiffs are debit card account holders of Chase who contend that Chase should not have temporarily lowered the transactional limits on Plaintiffs' deposit accounts in response to a third-party data breach that created a high risk of fraud to Chase and its customers.  Putting aside that Plaintiffs' allegations lack factual merit and fail to state a cause of action as a matter of law (and even defy common sense), Plaintiffs brought this action in the wrong forum.  Plaintiffs necessarily acknowledge that each of their accounts with Chase is governed by a binding and valid contract (the "2013 Deposit Account Agreement" or "Agreement"), which Plaintiffs attach to their Complaint and which expressly provides that Chase may lower transaction limits in these circumstances.  Indeed, Plaintiffs have asserted a breach of contract claim based upon this Agreement.  What Plaintiffs entirely overlook, however, is that the Agreement requires that ***all claims*** in this action be arbitrated on an individual basis only—that is, on a non-class, non-consolidated, and non-representative basis.  Thus, Plaintiffs' claims should be dismissed in favor of individual arbitration proceedings.

---

[1] Chase also requests that pursuant to Rule 6(b), the Court extend the deadline for Chase to file a substantive Rule 12(b) motion, if necessary, until 20 days after the Court rules on the instant motion to dismiss and the threshold issue of the arbitrability of Plaintiffs' claims on an individual basis only.

To determine whether Plaintiffs' claims must be arbitrated under the Federal Arbitration Act ("FAA"), the Court must determine whether the claims fall within the scope of the arbitration provision in the Agreement and, in doing so, must resolve all doubts in favor of the arbitrability of Plaintiffs' claims.  There can be no serious dispute that Plaintiffs' claims fall squarely within the parties' agreement to arbitrate.  The arbitration provision is broad and unambiguous, and encompasses "any dispute relating in any way to your account or transactions. . . ."  (2013 Deposit Account Agreement, Ex. G to Pls.' Compl., ECF No. 1-3, at 17.)  This includes "[a]ny claims or disputes" between the parties "arising from or relating to" Plaintiffs' deposit accounts, debit cards, or the Agreement itself.  (*Id.*)

The parties' broad and ambiguous arbitration agreement covers all of Plaintiffs' claims. Plaintiffs allege that Chase should not have suspended and reduced credit limits on Plaintiffs' Chase-issued debit cards in response to the recent and massive data breach at Target Corporation.[2] (Pls.' Compl., ECF No. 1, at ¶¶ 1-16.)  Based upon these allegations, Plaintiffs assert—on a class-wide basis—a claim for breach of the 2013 Deposit Account Agreement, a claim for breach of the implied covenant of good faith under the 2013 Deposit Account Agreement, and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and the Electronic Fund Transfer Act ("EFTA").[3]  Because each of these claims directly relates to and arises from a dispute as to how Chase administered Plaintiffs' deposit accounts, the contractual ability of Chase to lower transactional limits under the Agreement, and the Agreement itself, Plaintiffs' claims fall squarely

---

[2] *See generally* "Response & resources related to Target's data breach," *available at* https://corporate.target.com/about/payment-card-issue.aspx (last visited Mar. 21, 2014).

[3] Plaintiffs erroneously refer to their EFTA claims as violations of Dodd-Frank Wall Street Reform And Consumer Protection Act, but that is irrelevant for purposes of this motion.  (*See* Pls.' Compl. ¶¶ 42-59.)

within the arbitration provision in the Agreement for multiple reasons.  Therefore, all claims must be arbitrated.

Furthermore, the claims must be arbitrated on an individual, non-class basis under the express language of the Agreement and controlling law.  The parties' contract provides that disputes must be arbitrated "on an individual basis" and may not proceed on a class-wide basis. (2013 Deposit Account Agreement, Ex. G to Pls.' Compl., at 17.)  These provisions are both commonplace and routinely enforced.  Recognizing that arbitration is a matter of contract, both the Supreme Court and the Eleventh Circuit have repeatedly enforced similar arbitration agreements with class action waivers.  *See, e.g.*, *American Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011); *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224 (11th Cir. 2012); *Cruz v. Cingular Wireless*, 648 F.3d 1205 (11th Cir. 2011).  In fact, Chase's arbitration clause in the Agreement has been enforced by courts across the country.  *See, e.g., Scott v. JPMorgan Chase & Co.*, No. 13 Civ. 646(KPF), 2014 WL 338753 (S.D.N.Y. Jan. 30, 2014); *Pham v. JPMorgan Chase Bank, N.A.*, No. RG12-652919, slip op. (Cal. Super. Ct. July 30, 2013) (attached hereto as Ex. 1).  Accordingly, individual (non-class) arbitration is required here.

Put simply, consistent with the parties' broad arbitration agreement and the mandate of *AT&T Mobility*, *Italian Colors*, *Pendergast, Cruz, Scott*, *Pham*, and other controlling authority, the Court should dismiss this action in favor of mandatory arbitration on an individual basis.

## II.   FACTUAL BACKGROUND

### A.   The Parties

Chase is a federally chartered bank with its principal place of business in Ohio. (Declaration of Shayla Goforth ("Goforth Decl."), attached hereto as Ex. 2, at ¶ 2.)  Chase

provides personal banking services to consumers that include, among other things, deposit accounts and debit cards for deposit accounts. (Goforth Decl., Ex. 2, at ¶ 3.) Plaintiffs are residents of Florida and Illinois. Specifically, Plaintiffs Amjad Hayaud-Din and Irene Sanchez are alleged to be residents of Florida, and Plaintiffs Tomas Torres and Irene Torres are alleged to be residents of Illinois. (Pls.' Compl. ¶ 17.) Plaintiff Sanchez appears to be the wife of Plaintiffs' counsel, with whom she jointly owns the account that is the subject matter of her claims. (Goforth Decl., Ex. 2, at ¶ 11.)

**B.      The Controlling 2013 Deposit Account Agreement Provides For The Arbitration Of All Disputes On An Individual Basis.**

Plaintiffs acknowledge that the 2013 Deposit Account Agreement is the contract that governs the banking relationship between each Plaintiff and Chase. (Pls.' Compl. ¶ 61.) Chase provided a copy of the Deposit Account Agreement to each Plaintiff and the amendments thereto, including the 2013 Deposit Account Agreement. (Goforth Decl., Ex. 2, at ¶¶ 4-6, 13, 16, 19 and 22.) In fact, Plaintiffs have asserted a breach of contract claim based upon the 2013 Deposit Account Agreement, which they attach to their Complaint. (*Id.* at ¶¶ 60-68.) At the time the lawsuit was filed, the 2013 Deposit Account Agreement governed Plaintiffs' deposit accounts and debit cards (Goforth Decl., Ex. 2, at ¶ 4.)

The 2013 Deposit Account Agreement informs Plaintiffs that it "*is the contract that governs your account*." (2013 Deposit Account Agreement, Ex. G to Pls.' Compl., at 2 (emphasis in original).) It provides that by "using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms and conditions contained in this agreement." (*Id.*)

Critically, the 2013 Deposit Account Agreement includes an arbitration section that, in the event of any dispute, permits either party to elect binding arbitration and that forbids any arbitration from proceeding on a class-wide basis:

**12.     Arbitration**

You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court).  This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW.  UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL.  YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE ON A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION.  ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

*What claims or disputes are subject to arbitration?*

Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration.  Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included.  Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies.  Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future.  All such claims or disputes are referred to in this agreement as "Claims."

The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

*Can I (the customer) cancel or opt out of this agreement to arbitrate?*

You have the right to opt out of this agreement to arbitrate if you tell us within 60 days of opening your account.  If you want to opt out, call us at 1-800-

935-9935, or see a banker.  Otherwise this agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3) you file for bankruptcy.

*What about class actions or representative actions?*

Claims in arbitration will proceed on an individual basis, on behalf of the named parties only.

YOU AND WE AGREE NOT TO:

1) SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING;

2) SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE;

3) BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR

4) SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

\*   \*   \*

*Who will pay for costs?*

We will pay for costs that are required to be paid by us under the arbitration administrator's rules of procedure.  Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. If you win arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator.  All other fees will be allocated according to the arbitration administrator's rules and applicable law.  If you consider that you are unable to afford any fees that would be yours to pay, you may request that we pay or reimburse them, and we will consider your request in good faith.

(*Id.* at 17-18.)[4]

---

[4] The Deposit Account Agreement is also made available on Chase's website.  (*See* Chase Deposit Agreement, *available at* https://apply.chase.com/OAO/ViewDisclosures.aspx?

As this Agreement makes clear, each new accountholder is given the right to opt out of the arbitration requirement within 60 days of opening his or her account.  (2013 Deposit Account Agreement, Ex. G to Pls.' Compl., at 17; Goforth Decl., Ex. 2, at ¶¶ 7.)   Existing accountholders, including Plaintiffs, were given the right to right to opt out of arbitration by April 2, 2012.  (Goforth Decl., Ex. 2, at ¶ 5.)  In accordance with this "opt out" provision, Chase tracks requests from accountholders to opt out of the arbitration requirement in an "opt-out list." (Goforth Decl., Ex. 2, at ¶ 8.)

For those customers who do not choose to opt-out, the Deposit Account Agreement unambiguously requires that:  (a) at the election of either Chase or the consumer, "any claims or disputes" related to "this agreement" or the borrower's "deposit account, transactions involving your deposit account . . . and any related service" must be arbitrated; and (b) the arbitration "will proceed on an individual basis, on behalf of the named parties only" and will not proceed "ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION."  (2013 Deposit Account Agreement, Ex. G to Pls.' Compl., at 17.)  As detailed below, none of the Plaintiffs opted out of the arbitration agreement.

### C.   Chase Provided Each Plaintiff With The Deposit Account Agreement, Along With Notice Of The 2013 Amendments To The Agreement, And No Plaintiff Opted Out Of The Arbitration Requirement.

In or around February 2012, Plaintiff Irene Sanchez was added to the existing deposit account of her husband, William Sanchez (counsel for the Plaintiffs in this matter), and was issued a debit card for this joint account.  (Goforth Decl., Ex. 2, at ¶ 11), Chase provided the Sanchezes with a copy of the Deposit Account Agreement and notice of its amendments,

---

DisclosuresUserType=Consumer&DisclosuresZipCode=945683450 (last visited Mar. 21, 2014).)

including the 2013 Deposit Account Agreement. (Goforth Decl., Ex. 2, at ¶¶ 4-5, 12-13.)[5]  Mrs. Sanchez was given notice that she could opt out of arbitration as the required dispute resolution mechanism, but she did not do so. (Goforth Decl., Ex. 2, at ¶ 12.)

Since at least November 2011, Plaintiff Tomas Torres has had an individual and joint deposit account with Chase, and was issued at least one debit card in connection with those accounts.  (Goforth Decl., Ex. 2, at ¶ 14.)[6]  Chase provided Mr. Torres with a copy of the Deposit Account Agreement and notice of its amendments, including the 2013 Deposit Account Agreement.  (Goforth Decl., Ex. 2, at ¶¶ 4-5, 15-16.)  Despite notice that he could opt out of arbitration, Mr. Torres did not do so.  (Goforth Decl., Ex. 2, at ¶¶ 15.)

Similarly, Plaintiff Marilyn Grabador Torres opened a joint deposit account with Mr. Torres with Chase and was issued a debit card in connection with that account.  (Goforth Decl., Ex. 2, at ¶ 17.)  Chase provided Mrs. Torres with a copy of the Deposit Account Agreement and notice of its amendments, including the 2013 Deposit Account Agreement.  (Goforth Decl., Ex. 2, at ¶¶ 4-5, 18-19.)  Ms. Torres also received notice that she could opt of arbitration, but did not do so.  (Goforth Decl., Ex. 2, at ¶ 18.)

Lastly, since at least November 2011, Plaintiff Amjad Hayaud-Din has had a deposit account with Chase and a debit card for that account.  (Goforth Decl., Ex. 2, at ¶ 20.)  As with the other named Plaintiffs, Chase provided Mr. Hayaud-Din with a copy of the Deposit Account Agreement and notice of the 2013 Deposit Account Agreement.  (Goforth Decl., Ex. 2, at ¶¶ 4-5,

---

[5] In addition to being attached to Plaintiffs' Complaint, Chase has attached a copy of the 2013 Deposit Account Agreement to Ms. Goforth's declaration.

[6] It appears that Plaintiffs' Complaint has misspelled Mr. Torres' name as "Thomas Torres."  In the affidavit attached to the Complaint, Mr. Torres' name appears as "Tomas Torres."  (Torres Aff., ECF No. 1-3, attached as Ex. D to Pls.' Compl.)

21-22.)  Despite receiving notice that he could opt out of the arbitration requirement, Mr. Hayaud-Din did not do so.  Goforth Decl., Ex. 2, at ¶ 21.)

> **D.**     **Plaintiffs Filed This Action And, In So Doing, Ignored Their Agreements To Arbitrate Their Disputes With Chase.**

As discussed above, the arbitration provision in the 2013 Deposit Account Agreement requires Plaintiffs to arbitrate all disputes pertaining to the "agreement," their "deposit account[s]," or any "transactions involving [their] deposit account[s]."  (2013 Deposit Account Agreement, Ex. G to Pls.' Compl., at 17.)  Despite this provision, Plaintiffs filed this lawsuit on February 6, 2014.

As Plaintiffs acknowledge, "[t]his case is about . . . [Chase's ability to] suspend and reduce credit limits on debit cards."  (Pls.' Compl. ¶ 1.)  The terms governing changes to the limits on debit cards are set forth in the controlling 2013 Deposit Account Agreement (*Id.* ¶ 64), which allows Chase to suspend or limit transactions if Chase "suspect[s] that your Card may have fraudulent activity or for any other reason where we believe there is a risk to you or us." (2013 Deposit Account Agreement, Ex. G to Pls.' Compl., at 24.)  Notwithstanding the plain language of the Agreement, the Complaint broadly challenges Chase's decision to suspend or reduce the withdrawal limits on the accounts of many of Chase's customers after the disclosure by Target Corporation that it had experienced a massive data breach potentially exposing Chase's customers (and others) to a risk of identity theft, fraud, and other harm.  (Pls.' Compl. ¶¶ 1-16.)

Based upon their challenge to Chase's administration of Plaintiffs' deposit accounts, Plaintiffs bring claims under the EFTA (Counts I-III), a claim for breach of contract under the 2013 Deposit Account Agreement (Count IV), a claim for breach of the implied covenant of fair dealing under the 2013 Deposit Account Agreement (Count V), and a FUDTPA claim (Count

VI).  (*Id.* ¶¶ 42-85).  Plaintiffs purport to bring each of their claims on behalf of a nationwide class of account holders.  (*Id.* ¶ 35).  Because all of Plaintiffs' claims, no matter how styled, pertain to their deposit accounts, transactions associated with those accounts, and the Agreement itself, their claims are subject to individual arbitration under the 2013 Deposit Account Agreement.

### E.      Chase Has Elected To Proceed With Arbitration.

On February 27, 2014, Chase's counsel wrote to Plaintiffs' counsel, noted the mandatory arbitration provision, and informed Plaintiffs' counsel that Chase was electing to arbitrate the claims on an individual basis.  (Feb. 27, 2014 Letter From Def. Counsel To Pls.' Counsel ("Feb. 27, 2014 Letter"), attached hereto as Ex. 3, at 1.)  Chase asked whether Plaintiffs would voluntarily proceed to arbitration.  (*Id.*)  On March 20, 2014, Plaintiffs' counsel responded and, to date, has not agreed to arbitration on an individual basis.  As described below, the Court should dismiss this action in favor of individual arbitration.

## III.   ARGUMENT

Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000).  The FAA expresses a strong preference in favor of arbitration to resolve disputes and requires that courts "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *accord Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with other contracts.").  Under this policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *Picard v. Credit Solutions, Inc.*, 564

F.3d 1249, 1253 (11th Cir. 2009) ("The FAA creates a strong policy in favor of arbitration [citations omitted] and 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration'") (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).

Here, pursuant to these well-settled principles, it is clear that:  (a) the FAA applies to the 2013 Deposit Account Agreement; (b) all of Plaintiffs' claims fall within scope of the arbitration provision in the 2013 Deposit Account Agreement; and (c) consistent with controlling law and the parties' arbitration agreement, Plaintiffs only may pursue their claims in arbitration on an individual basis and may not pursue class-wide claims or relief.  Accordingly, Plaintiffs' putative class action should be dismissed in favor of individual arbitration.

### A.     The Federal Arbitration Act Applies.

The FAA applies to arbitration agreements in any contract evidencing a transaction involving interstate commerce.  *See, e.g., Picard*, 564 F.3d at 1252-53.  Plaintiffs' claims in this case fall squarely within the FAA.  Plaintiffs are citizens of Florida and Illinois (Pls.' Compl. ¶ 17), while Chase is a federally chartered bank with its principal place of business in Ohio.  (*Id.* ¶ 18.)  Moreover, the arbitration agreement expressly states that "[t]his arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ('FAA')." (2013 Deposit Account Agreement, at 17.)  For each of these reasons, courts have recognized that Chase's Deposit Account Agreement is governed by the FAA.  *See Scott,* 2014 WL 338753, at *6-7 (analyzing the Chase Deposit Account Agreement under the FAA); *Pham*, slip op. at 7 (holding that the Chase Deposit Account Agreement anticipates interstate commerce and is subject to the FAA).

Because the arbitration requirement in the 2013 Deposit Account Agreement covers deposit account transactions and other financial transactions that impact interstate commerce, the FAA and its presumption in favor of arbitration unquestionably apply here.

**B.      Plaintiffs Are Required To Arbitrate All Of Their Claims.**

          **1.      Plaintiffs Agreed To Arbitrate Their Disputes With Chase Through The Very Agreement That Plaintiffs Are Suing Under And That Plaintiffs Have Attached To Their Complaint.**

Plaintiffs concede that the 2013 Deposit Account Agreement is the contract that governs their Chase accounts which are the subject of this litigation and have sued for breach of that Agreement.  (Pls.' Compl. ¶ 61 (citing the 2013 Deposit Account Agreement and alleging its terms "constitute a contract between the Class members and Defendants [sic].").)  Indeed, as established above and in the accompanying declaration of Ms. Goforth, each Plaintiff received the Deposit Account Agreement, including notice of the 2013 amendments to this Agreement, and did not opt out of its arbitration requirement.  (Goforth Decl., Ex. 2, at ¶¶ 4-5, 12-13, 15-16, 18-19, and 21-22.)  Accordingly, there can be no dispute that each of the Plaintiffs agreed to the arbitration requirement in the Deposit Account Agreement.

          **2.      Plaintiffs' Claims All Fall Within The Broad Scope Of The Arbitration Provision In The 2013 Deposit Account Agreement.**

There is a well-settled presumption in favor of the arbitrability of disputes.  *See*, *e.g.*, *Bolamos v. Globe Airport Security Servs., Inc.*, No. 02-211005, 2002 WL 1839210, at *1 (S.D. Fla. May 21, 2002) ("In enacting the FAA, Congress established a strong federal policy in favor of arbitration agreements .") (Moreno, J.).  As the Supreme Court and the Eleventh Circuit have made clear, courts must "construe arbitration clauses generously, ***resolving all doubt in favor of arbitration***[.]"  *Becker v. Davis,* 491 F.3d 1292, 1305 (11th Cir. 2007) (emphasis added), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle,* 556 U.S. 624 (2009); *see also*

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985) ("'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration'" (internal citations omitted)); *Ruby-Collins, Inc. v. City of Huntsville,* 748 F.2d 573, 576 (11th Cir. 1984) ("arbitration clauses are to be generously construed and all doubts are to be resolved in favor of arbitration").

So long as the dispute "touch[es]" on a matter covered by the arbitration clause, it must be arbitrated. *In re Managed Care Litig*., No. 00-MD-1334, 2003 WL 22410373, at *3 (S.D. Fla. Sept. 15, 2003) (Moreno, J.) ("If Providers' allegations 'touch matters' covered by the relevant arbitration agreements, then those claims must be arbitrated, irrespective of how the allegations are labeled"); *see also Mitsubishi Motors Corp.,* 473 U.S. at 625 n. 13 ("insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, the Court of Appeals properly resolved any doubts in favor of arbitrability"). In fact, consistent with the presumption in favor of arbitration, a dispute must be arbitrated unless there is "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commn's Workers of Am*., 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrier & Gold Navigation Co*., 363 U.S. 574, 582-83 (1960)).

Here, the scope of the arbitration agreement at issue is broad. The arbitration provision in the 2013 Deposit Account Agreement requires arbitration of:

- "[A]ny dispute relating in any way to [Plaintiffs'] account or transactions,"

- All "[c]laims or disputes between [Plaintiffs] and us about [Plaintiffs'] deposit account[s], transactions involving [Plaintiffs'] deposit account[s] . . . and any related service;" and

- "Any claims or disputes arising from or relating to this agreement" or "any prior account agreement between us . . . ."

-13-

(2013 Deposit Account Agreement, Ex. G to Pls' Compl., at 17-18.)  All claims are subject to arbitration "regardless of what theory they are based on or whether they seek legal or equitable remedies."  (*Id.*)  In addition, "[a]rbitration applies to any and all such claims, whether they arose in the past, may currently exist, or may arise in the future."  (*Id.*)

All of Plaintiffs' claims are arbitrable for multiple independent reasons.  The claims relate to Plaintiffs' accounts, transactions associated with these accounts, and even the Agreement itself.  As Plaintiffs acknowledge, each claim challenges Chase's decision to lower or suspend withdrawal limits for Chase debit cards.  (Pls.' Compl. ¶ 1.)  This dispute is specifically covered by the Agreement, which, in fact, expressly authorizes Chase to lower or suspend such limits. (2013 Deposit Account Agreement, Ex. G to Pls' Compl., at 24.)  Indeed, the Complaint contains a claim for breach of the Agreement itself (Pls.' Compl. ¶¶ 1, 61), claiming that Chase has "broken contractual promises" to Plaintiff—a claim that, by definition, "aris[es] from or relat[es] to this agreement" and, therefore, must be arbitrated on an individual basis.  (2013 Deposit Account Agreement, Ex. G to Pls' Compl., at 17.); *see also 24 Go Wireless, Inc. v. AT&T Mobility II, LLC,* No. 11-20930-CIV, 2011 WL 2607099, at *3 (S.D. Fla. June 30, 2011) (dismissing case and requiring arbitration of all claims that fell within "broad language of the arbitration provision") (Moreno, J.).

Because Plaintiffs' claims and allegations directly "relate" to Plaintiffs' deposit accounts, transactions associated with those accounts, and the Agreement itself, they fall squarely within the parties' agreement to arbitrate for multiple reasons and must be arbitrated.

C.     **The Arbitration Provision Mandates Individual, Non-Class Arbitration Of Plaintiffs' Claims.**

It is well-settled that the Court must enforce the parties' arbitration agreement as written, including its clear mandate that the arbitration proceed on an individual basis.  *See, e.g., AT&T Mobility*, 131 S. Ct. at 1748; *accord Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 599 U.S. 662, 683 (2010) ("Underscoring the consensual nature of private dispute resolution … parties are 'generally free to structure their arbitration agreements as they see fit.'" (citations omitted)). Indeed, the Supreme Court and the Eleventh Circuit have repeatedly rejected challenges to class-action waivers in arbitration agreements.

For instance, in *AT&T Mobility,* the Supreme Court held that the FAA preempted a state rule that precluded enforcement of class action waivers in arbitration agreements.  131 S. Ct. at 1748, 1753.  The Supreme Court reasoned that such a rule "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" in establishing the FAA, *id.* at 1753 (internal citations omitted), including respecting the parties' expectations and their contractual right to agree to the terms under which arbitration will take place.  *Id.* at 1752-53.  The Supreme Court further reasoned that "[r]equiring the availability of classwide arbitration," contrary to the parties' contractual agreement, "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."  *Id.* at 1748.[7]

Even more recently, the Supreme Court in *Italian Colors* overturned a Second Circuit rule that allowed courts to reject class action waivers in arbitration agreements for federal statutory claims if the plaintiff would incur prohibitive costs to arbitrate an individual case.

*Italian Colors*, 133 S. Ct. at 2312.  Because the "principal purpose" of the FAA "is the enforcement of arbitration agreements according to their terms," the Supreme Court held that the "FAA does not sanction" any such basis for refusing to enforce the arbitration agreement's class action waiver.  *Id.*  Indeed, refusing to enforce a class action waiver would improperly "destroy" the parties' agreement for the "speedy resolution that . . . bilateral arbitration in particular was meant to secure."  *Id.*

Consistent with *AT&T Mobility* and *Italian Colors*, the Eleventh Circuit has consistently rejected challenges to class action waiver provisions in arbitration agreements.  *See Pendergast,* 691 F.3d at 1236 (affirming order dismissing action in favor of individual arbitration because "we conclude that we need not reach the questions of whether Florida law would invalidate the class action waiver in the parties' contract because, to the extent it does, it would be preempted by the FAA.  Under *Concepcion*, both the class action waiver and the arbitration clause must be enforced according to their terms."); *Cruz,* 648 F.3d at 1212-16 (affirming order compelling arbitration on an individual basis and rejecting the argument that a class action waiver is unenforceable as contrary to public policy).

In fact, courts have repeatedly upheld the very class-action waiver that is at issue here. Following *AT&T Mobility* and *Italian Colors*, courts have not hesitated to enforce the arbitration clause in Chase's Deposit Account Agreement and order individual, non-class arbitration on claims, like those asserted by Plaintiffs here, that fall within its broad ambit.  *See, e.g., Scott*, 2014 WL 338753, at *10-11 (ordering arbitration of claims concerning an overdraft protection

---

[7] The Supreme Court also stressed that "[a]rbitration is poorly suited to the higher stakes of class litigation." *Id.* at 1752.  Indeed, "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment."  *Id.* at 1751.

service offered to Chase's checking account customers); *Pham*, Ex. 1, slip op. at 7 (ordering arbitration of claims challenging payday loans).

Here, the arbitration provision in the 2013 Deposit Account Agreement clearly and unambiguously states that claims will be arbitrated on an individual basis and, further, that there is no right for any claim to be arbitrated on a class action basis or in a representative capacity. (2013 Deposit Account Agreement, Ex. G to Pls' Compl., at 17-18.)  Chase has elected to proceed with arbitration on an individual basis.  (Feb. 28, 2014 Letter, Ex. 3.)  Because the arbitration provision requires arbitration of all of Plaintiffs' claims, but prohibits arbitration of those claims on a class-action or representative basis, this Court should compel arbitration of Plaintiffs' claims on an individual, non-class basis.

IV.    **CONCLUSION**

For all of these reasons, the Court should dismiss Plaintiffs' claims pending arbitration of the claims on an individual, non-class basis.  In the alternative, the Court should stay the claims pending individual arbitration.

**CERTIFICATE OF COMPLIANCE WITH S.D. FLA. L.R. 7.1(A)(3)**

Pursuant to S.D. Fla. L.R. 7.1(a)(3), the undersigned counsel contacted Plaintiffs' counsel regarding the relief requested in this Motion, and, to date, Plaintiffs have not agreed to arbitrate their claims on an individual basis in accordance with the 2013 Deposit Account Agreement.

Dated:  March 24, 2014     Respectfully submitted,

                */s/ Robert M. Brochin*
                Robert M. Brochin
                Florida Bar No. 319661
                rbrochin@morganlewis.com
                Brian M. Ercole
                Florida Bar No. 0102189
                bercole@morganlewis.com
                Morgan Lewis & Bockius LLP
                200 South Biscayne Boulevard – Suite 5300
                Miami, Florida 33131-2339
                Telephone: 305.415.3000
                Facsimile: 305.415.3001

                *Counsel for Defendant, JPMorgan Chase*
                *Bank, N.A.*

**<u>CERTIFICATE OF ELECTRONIC FILING AND SERVICE</u>**

I hereby certify that on March 24, 2014, I electronically filed the foregoing Defendants'

Motion To Dismiss, Or In The Alternative, To Stay The Action In Favor Of Individual

Arbitration And Incorporated Memorandum Of Law on all counsel of record via the CM/ECF

system.

*/s/ Robert. M. Brochin*  _____
Robert M. Brochin

-19-